# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENNETH P. GEE, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 03-432-S-LMB |
| ) | |
| v. ) | |
| ) | **ORDER** |
| DIRK KEMPTHORNE, SECRETARY, UNITED ) | |
| STATES DEPARTMENT OF THE INTERIOR, ) | |
| in his official capacity as representative of the ) | |
| UNITED STATES DEPARTMENT OF THE ) | |
| INTERIOR; JOHN AND JANE DOES 1-10; ) | |
| JOHN DOE GOVERNMENTAL ENTITIES ) | |
| 1-10; DOE PARTNERSHIPS, CORPORATIONS, ) | |
| FIDUCIARIES, or OTHER ENTITIES 1-10, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Currently pending before the Court are Defendants' Motion in Limine (Docket No. 68) and issues of sovereign immunity and mootness raised in Defendants' Trial Brief (Docket No. 69). In the interest of avoiding delay, and because the Court conclusively finds that the decisional process on the pending matters would not be significantly aided by oral argument, the Court will address and resolve the matters without a hearing. Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Order.

**ORDER -1-**

# I.

# BACKGROUND[1]

Kenneth P. Gee ("Plaintiff") is a teacher working at a Bureau of Reclamation facility within the arm of the Department of the Interior (the "Department"). Plaintiff also is a member of the Church of Jesus Christ of Latter-Day Saints ("LDS Church"). This action arises out of Plaintiff's objection to receiving e-mails from various individuals employed by the Department related to the recognition of June as Gay and Lesbian Pride Month. In response to some of these e-mails, Plaintiff sent e-mails company-wide stating, among other things, that he was "appalled that any government employee, be he/she William J. Clinton or myself, would use government computers and e-mail to preach his/her own personal version of morality," (June 2000 e-mail), that Plaintiff's "religious beliefs are that homosexual activity is filthy perversion," (June 2000 e-mail), and that "you may be offended by the idea of recognizing or celebrating gay pride. If you wish not to be included in e-mailings related to this recognition and celebration, the Federal law requires an agency to provide reasonable accommodation to an employee who makes such request for reasons related to religion," (June 2003 e-mail).

The Department responded to Plaintiff's e-mails and to his request for religious accommodation with a "Memorandum of Counseling" dated June 15, 2000, a second Memorandum dated June 6, 2003, and a third Memorandum denying Plaintiff's accommodation request (collectively the "2000 and 2003 Memoranda"). *Defendants' Reply Trial Brief*, Exhibits A-D (Docket No. 81, Atts. 2-4). The June 15, 2000 Memorandum advised Plaintiff that he was

---

[1] The facts and record citations are set forth more fully in the Order denying the parties' Motions for Summary Judgment (Docket No. 53) and are incorporated by reference in this Order. Accordingly, only the facts necessary to resolve the issues at hand will be discussed in this section.

**ORDER -2-**

being "put[] on notice that comments of this nature are unacceptable and inappropriate in the workplace" and he was given a "Direct Order" that he was "prohibited from using [his] government computer, E-mail or Internet for other than official government business." *Id*. at Exhibit A.  The Memorandum advised Plaintiff that his "failure to comply with this 'Direct Order' will result in the revocation of your Internet and E-mail privileges and will be grounds for possible disciplinary action up to and including your removal from Federal Service." *Id.* Further restrictions were imposed on Plaintiff, but were removed by an August 16, 2000 revision of the June 15, 2000 Memorandum made pursuant to an agreement between Plaintiff and the supervisor who issued the June Memorandum.  *Id*. at Exhibit B.

On October 8, 2003, Plaintiff filed the instant action, bringing six claims: 1) religious discrimination in violation of Title VII of the 1964 Civil Rights Act in the failure to accommodate Plaintiff and the creation of a hostile work environment; 2) deprivation of the First Amendment right to freedom of speech; 3) deprivation of the First Amendment right to free exercise of religion; 4) deprivation of the Fifth Amendment right to equal protection of the law; 5) violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000-bb-1(a); and 6) a demand for declaratory relief.

Both parties filed Motions for Summary Judgment, which the Court denied.  *Order* (Docket No. 53).  Defendants' Motion for Reconsideration also was denied and this action scheduled for a jury trial on the merits of Plaintiff's claims.  *Order* (Docket No. 58).  Defendants have now filed a Motion in Limine and also have argued in their Trial Brief that some of Plaintiff's claims are rendered moot by the Department's adoption of a new computer use policy and/or barred by sovereign immunity.  Plaintiff has been provided the opportunity to respond, and the Court will now address and consider the arguments of the parties.

**ORDER -3-**

## II.

## SOVEREIGN IMMUNITY

Defendants argue that the doctrine of sovereign immunity bars Plaintiff's request for monetary damages based on his First Amendment, RFRA, and Fifth Amendment claims. *Defendants' Trial Brief*, p. 3 (Docket No. 69). Plaintiff has not responded to this argument even though it was raised in Defendants' Memorandum in Support of Summary Judgment (Docket No. 37, Att. 1, p. 19), Defendants' Memorandum in Support of Motion for Reconsideration (Docket No. 55, Att. 2, p. 14), and Defendants' Trial Brief (Docket No. 69),[2] nor has Plaintiff pointed to any authority establishing a waiver of sovereign immunity for these types of claims. Plaintiff's non-objection thus will be considered a consent to the dismissal of his monetary damages claims.[3]  Dist. Idaho Loc. Civ. R. 7.1(f).

For this reason, and more importantly because the case law supports dismissal of these claims on sovereign immunity grounds, as argued by Defendants, *see, e.g.*, *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (discussing RFRA claims); *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1260 (D. Kan. 1999) (considering First Amendment damages claims); *Cato v. United States*, 70 F.3d 1103, 1110-11 (9th Cir. 1995), Counts 2, 3, 4, and 5 of Plaintiff's Complaint, to the extent they seek monetary relief, will be dismissed as being barred under the doctrine of sovereign immunity.

---

[2] The Orders disposing of Defendants' Motion for Summary Judgment and Motion for Reconsideration also did not address Defendants' sovereign immunity argument and, thus, the issue will be decided in this Order.

[3] Plaintiff's Trial Brief asserts a claim for compensatory damages under 42 U.S.C. § 1981(a), but this section relates to Plaintiff's Title VII claims only and Defendants have not argued that sovereign immunity prevents recovery of monetary damages for this claim. *Plaintiff's Trial Brief*, p. 17 (Docket No. 70). Accordingly, the Title VII damages claim will remain.

**ORDER -4-**

### III.

### MOOTNESS

Article III of the United States Constitution limits the jurisdiction of federal courts to the consideration of "Cases" or "Controversies." U.S. Const. Art. III, § 2, cl. 1. The "case or controversy" requirement prevents federal courts from deciding a case on the merits if it is moot, that is, if such a decision could no longer provide "meaningful relief" to the parties. *Christian Coalition of Alabama v. Cole*, 355 F.3d 1288, 1290-91 (11th Cir. 2004). The Supreme Court has held that when considering the potential mootness of a claim for declaratory relief, "[t]he question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (citation and internal quotation marks omitted)).

Defendants argue that Plaintiff's First Amendment, Fifth Amendment, and RFRA claims are moot because they challenge e-mail policies that were changed by the Department in August of 2006. Thus, Defendants argue, the only equitable relief available to Plaintiff would be a finding by the Court that the e-mail policies in effect at the time Plaintiff sent the e-mails were unconstitutional.[4] *Defendants' Trial Brief*, p. 3 (Docket No. 69). "In other words, a finding the 'old' e-mail policies were unconstitutional on their face and/or as applied to [Plaintiff], would not benefit [Plaintiff] because any e-mails he has sent since August 2006, or emails he sends in the future, will be subject to the limitations of the new policy." *Id.* at pp. 3-4.

---

[4] Because the monetary damages claims have been dismissed, only the claims for equitable relief remain.

**ORDER -5-**

Plaintiff responds that his First Amendment, Equal Protection, and RFRA claims are not moot because he is still subject to the orders restricting his use of the Department's e-mail system and "[a]t no time has the Department withdrawn the restrictions imposed by [the 2000 and 2003 Memoranda]." *Plaintiff's Response*, p. 3 (Docket No. 80).  Plaintiff relies on a three-day suspension imposed on him in January of 2006 as support for his claim that the orders given him by way of the 2000 and 2003 Memoranda are still in effect.  The 2006 suspension, however, was based on old computer use policies that are no longer in effect.  *Gallegos Declaration*, ¶ ¶ 4, 5; Exhibits E & F (Docket No. 84).

Additionally, William McDonald, the Regional Director of the Bureau of Reclamation, has averred that "[a]ny restrictions on the use of email by [Plaintiff] that are set forth in" the 2000 and 2003 Memoranda "that are inconsistent with the new [Department] email use policy are no longer in effect."[5]  *McDonald Declaration*, ¶ 3 (Docket No. 82).  Mr. McDonald recently sent Plaintiff an official Memorandum advising him that "the only email use policy to which he is subject at this time is the" new policy and that any restrictions in the 2000 and 2003 Memoranda that are inconsistent with this new policy are no longer in effect.  *Id.* at ¶ 5.  Moreover, "there is nothing in [Plaintiff's official personnel file] reflecting any disciplinary action or documents of a disciplinary nature prior to 2006."  *Gallegos Declaration*, ¶ 2 (Docket No. 84).  Specifically, none of the 2000 and 2003 Memoranda are in this file.  *Id.* at ¶ 5.

---

[5]  The Court recognizes that this information has been just recently placed in the record; however, it is relevant to whether Plaintiff's claims present a case or controversy and "[t]he mootness inquiry must be made at every stage of a case."  *McPherson v. Mich. High School Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc).  *See also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation and internal quotation marks omitted) (explaining that "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed").

**ORDER -6-**

Thus, because the Department has withdrawn the restrictions imposed by the 2000 and 2003 Memoranda and has removed them from Plaintiff's official file, Plaintiff has obtained much of the declaratory relief he had requested.[6] In other words, Plaintiff's First Amendment, Equal Protection, and RFRA claims are based on his use of the Department's e-mail system and the policies limiting his use of that system.[7] Because the Department's policies have changed, any declaratory relief Plaintiff might obtain would have no impact on his use of the Department's computers because they are governed by a new policy.

However, the inquiry does not end here. A case is not moot simply because a defendant voluntarily ceases the allegedly wrongful behavior. However, while the voluntary cessation of wrongful conduct does not automatically render a case moot, the case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated.[8] *White v. Lee*, 227 F.3d 1214, 1243-44 (9th Cir. 2000); *Christian Coalition*, 355 F.3d at

---

[6] The declaratory relief requested in Plaintiff's Complaint includes a declaration of the rights and obligations of the parties with respect to the enforceability of the restrictions imposed by Defendants, an order requiring Defendants to "immediately cease and desist from enforcing" the restrictions and to remove all references to reprimands from his employee file, and a permanent injunction preventing Defendants from enforcing the restrictions. *Complaint* at p. 12 & ¶ 51 (Docket No. 1). As noted above, because the restrictions are no longer in effect and the references to those restrictions have been removed from Plaintiff's official file, Plaintiff has received the relief he requested. Plaintiff also requests that Defendants be enjoined from promoting the homosexual lifestyle to Plaintiff, but this type of relief is related to Plaintiff's accommodation claim—a claim Defendants have not argued is moot.

[7] Plaintiff has argued that it is not simply the "policies of the [Department] relating to the use of the Department's e-mail system by employees that [Plaintiff] objects to," but he "also is challenging the orders given him by superiors which have had a chilling effect on his religious expression *via the Department e-mail system*, have treated him less favorably than other employees, and have essentially forbidden him from expressing his religious beliefs." *Plaintiff's Response*, p. 2 (Docket No. 80) (emphasis added). This statement supports the idea that it is Plaintiff's expression through the e-mail system that is at issue in this action.

[8] Although Plaintiff has not raised the issue, the Court will consider it *sua sponte* because the case law indicates that this is the proper inquiry.

**ORDER -7-**

1291; *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990); *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 n.10 (1982).

Here, the Department's policy was changed only because the Department concluded that, pursuant to a 1988 Interagency Agreement for the Administration of Job Corps Centers, the Job Corps Centers (one of which employees Plaintiff) are required to follow the Department of Labor's e-mail policies instead of those established by the Department of Interior. *Rachetto Second Declaration*, ¶¶ 3-4 & Exhibit A (Docket No. 83). The 1988 Agreement provided that the Department of Labor should determine "the policy, standards, and requirements that govern Job Corps as a whole." *Id.* at Exhibit A, p. 1. It was the Deputy Commissioner for Policy, Administration, and Budget with the Department of Interior who issued the Memorandum explaining the change in policy. Because it was not a decision made by any of Plaintiff's immediate superiors, there is no indication that the Department changed its policies to render Plaintiff's claims moot, nor is there any indication that the Department will revert to its old e-mail use policies with respect to the Job Corps. Indeed, this action has been pending for three and one-half years and it was only recently that the e-mail policies were changed.

In this respect, it is notable "'that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.'" *Mosley*, 920 F.2d at 415 (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) (citing 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.7 (2d ed.)). *See also, e.g.*, *White*, 227 F.3d at 1243-44 (finding the plaintiff's claim for relief moot because the government agency enacted a permanent change to the way it conducted the challenged activity that was broad and unequivocal in its tone and determining that, for these reasons, the challenged conduct could not be expected to recur);

*Morrison v. Board of Educ. of Boyd County, Kentucky*, 419 F. Supp. 2d 937, 941-42 (E.D. Ky. 2006) (declining to adjudge the constitutionality of a school's policies that were no longer in effect). Moreover, the Department has issued an official Memorandum to Plaintiff stating that he is subject to the new policy and any restrictions placed on his use of e-mail in the past that conflict with the new policy are not enforceable.

In summary, it is Defendants' burden to persuade the Court that the challenged conduct cannot reasonably be expected to be repeated, and the Court finds this burden has been met with respect to Plaintiff's First Amendment and RFRA claims.[9]

Unlike these religious expression claims, however, Plaintiff's claim that he has been treated less favorably than other individuals in connection with the computer use policies because of his religious views will not be deemed moot because it is not clear that (if Defendants have treated Plaintiff differently) this wrong will not be repeated. Plaintiff has repeatedly alleged that he was treated differently because of his viewpoint and Defendants have not "renounced any intention to punish or reprimand [Plaintiff] if he expresses his opposition to Department recognition of Gay and Lesbian Pride Month." *Plaintiff's Response*, p. 3 (Docket No. 80). Specifically, Plaintiff claims that the basis for the Department's admonishment of him is the viewpoint and opinion expressed in his e-mails and he is challenging the less-favorable treatment he allegedly received in connection with his e-mail activity. *Plaintiff's Response*, pp. 2-3 (Docket No. 80).

---

[9] Because Plaintiff's First Amendment and RFRA claims have been deemed moot, it is not necessary to determine whether those claims raise legal issues that must be decided by the Court. *See Defendants' Trial Brief*, p. 4 (Docket No. 69).

**ORDER -9-**

Although the Department of Labor now sets the standards for e-mail and computer use, Plaintiff's supervisors presumably are still charged with applying those standards to Plaintiff's e-mail activity. The Department has not demonstrated that this type of alleged treatment will not be repeated simply because the e-mail policy has changed. For instance, at least one of Plaintiff's supervisors has indicated her personal disagreement with Plaintiff's viewpoint. *See Defendants' Reply Trial Brief,* Exhibit A (Docket No. 81, Att. 2) (indicating Ms. York may have a personal disagreement with Plaintiff's viewpoint). If Plaintiff has been treated differently in the past because of his religious beliefs, declaratory relief requiring consistent enforcement of any of the Department's current computer use policies, regardless of religion, is still potentially available.[10] To the extent Plaintiff may desire a declaration that, in the future, regardless of the Department's computer use policy, Plaintiff may not be treated differently in the enforcement of those policies because of his religious beliefs, relief may still be available. *See Complaint*, p.12 (Docket No. 1) (requesting that Defendants be enjoined from "interfering with the rights of . . . equal protection of plaintiff"). Because Defendants have not met their burden to establish that an equal protection violation will not likely be repeated, Plaintiff's equal protection claim will not be deemed moot.

## IV.

## MOTION IN LIMINE

Defendants seek an order preventing Plaintiff from introducing at trial any evidence (1) relating to his suspension from work in January 2006, and (2) regarding President Clinton's

---

[10] As Defendants have noted, Plaintiff's remedy for an equal protection violation "would be injunctive relief requiring [the Department] to stop treating [Plaintiff] differently from similarly situated employees." *Memorandum in Support of Motion for Reconsideration*, p. 13 (Docket No. 55, Att. 2).

**ORDER -10-**

Guidelines on Religious Expression in the Workplace, issued in August of 1997 ("Workplace Guidelines").  Defendants argue that this evidence is irrelevant.

### A.  Standards of Law

Only relevant evidence is admissible at trial.  *See* Fed. R. Evid. 402.  "Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

### B.  Plaintiff's 2006 Suspension

On October 3, 2005, Plaintiff received a Memorandum of Proposed Suspension, informing him that (i) an e-mail he sent simultaneously to 96 users violated Defendants' computer use policy limiting the number of e-mail recipients to five and (ii) he may be suspended for the activity.  *Defendants' Reply Trial Brief*, Exhibit E (Docket No. 81, Att. 6).  This e-mail circulated a proclamation on the family by LDS Church President Gordon B. Hinkley.  Plaintiff intends to testify that he sent the message as a response to the Department's June 2005 e-mail on Gay and Lesbian Pride Month.  *Plaintiff's Opposition*, p. 2 (Docket No. 79).  On January 5, 2006, the Department issued a Notice of Decision, Suspension, imposing a three-day suspension on Plaintiff.  *Defendants' Reply Trial Brief*, Exhibit F (Docket No. 81, Att. 7).

Defendants request exclusion of this evidence because Plaintiff's claims are based on events occurring from the years 2000 through 2003 and, therefore, events from 2006 are irrelevant.  *Memorandum in Support*, p. 2 (Docket No. 68, Att. 2).  Plaintiff argues the evidence is relevant because it "shows the government is continuing its efforts to silence and restrict [Plaintiff's] expression in opposition to the Department's recognition of Gay and Lesbian Pride

**ORDER -11-**

Month." *Plaintiff's Opposition*, p. 3 (Docket No. 79).  To the extent Plaintiff is asserting that the 2006 suspension may tend to support his argument that he was singled out because of his religious views, the 2006 suspension for sending an e-mail that expressed his religious views may be relevant to Plaintiff's equal protection claim.  However, the 2006 suspension cannot serve as a substantive basis for the equal protection claim because it occurred years after the specific violations alleged by Plaintiff as the bases for his equal protection claim in this action.

The 2006 suspension also may be relevant to Plaintiff's Title VII accommodation claim.  As part of his Title VII claim, Plaintiff is required to demonstrate that he was subjected to an adverse employment action.  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004).  The 2006 Notice of Decision, Suspension, explains that Plaintiff had "been clearly counseled regarding" the Department's policy with respect to personal e-mail use and cites the May 30, 2003 Memorandum and August 16, 2000 Direct Order as examples of clear management guidance to Plaintiff with respect to the e-mail policies.  *Defendants' Reply Trial Brief*, Exhibit F, pp. 2-3 (Docket No. 81, Att. 7).  Defendants have argued that the 2003 Memorandum and 2000 Direct Order do not constitute adverse employment actions, *Defendants' Reply on Motion in Limine*, p. 2 (Docket No. 85), and presumably will present a similar defense at trial.  Thus, the fact that the 2000 and 2003 Memoranda were relied on in imposing Plaintiff's 2006 Suspension may be relevant to the issue of whether those memoranda constitute adverse employment actions.

For these reasons, although Plaintiff may not use the evidence to argue that his constitutional rights were violated in 2006 when he was suspended, the Court will not exclude all evidence of his suspension from the trial at this time for the reasons stated.  The Court will consider the evidence submitted at trial and the stated purpose for introduction of the evidence and will entertain appropriate objections by the Defendants.  Further, should the evidence not be

**ORDER -12-**

excluded at trial, the Court will consider giving a jury instruction limiting the jury's consideration of the 2006 suspension evidence if Defendants propose an appropriate instruction.

### C. The Workplace Guidelines

Defendants also argue that the Workplace Guidelines should be excluded from trial because they were not intended to create new rights and, therefore, are irrelevant to Plaintiff's claims. *Defendants' Memorandum Supporting Motion in Limine*, p. 2 (Docket No. 68, Att. 2). With respect to Plaintiff's Title VII claim, however, the jury will be required to consider whether the Department initiated good-faith efforts to accommodate Plaintiff's religious practices. *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993). Although Section 3 of the Guidelines state they "are not intended to create any new right, benefit, or trust responsibility, substantive or procedural, enforceable at law or equity," it also establishes that the Guidelines "shall govern the internal management of the civilian executive branch." 1997 WL 475412 at *13. The Guidelines reiterate that agencies should accommodate their employees' exercise of religion unless such accommodation would impose an undue hardship on the conduct of the agencies' operations, and the Guidelines provide examples of such accommodations. *Id.* at *8. Accordingly, the Guidelines reflect a management policy that the Department is required to consider and therefore may be relevant to considering whether the Department engaged in a good faith effort to accommodate Plaintiff's requested religious accommodation.

Moreover, the Guidelines are referred to in some of the documents the Court anticipates will be offered into evidence at trial, *see, e.g., Defendants' Reply Trial Brief,* Exhibit C (Docket No. 81, Att. 4); *Defendants' Statement of Undisputed Facts*, Exhibit 21 (Docket No. 37, Att. 2), and therefore may be relevant to the jury's consideration of the evidence presented. For these

**ORDER -13-**

reasons, the Guidelines will not be excluded from the trial at this time.  However, Plaintiff may not use the Guidelines to argue that they establish a right to the type of activity in which he engaged.  Additionally, this ruling is without prejudice to an appropriate objection at trial should Plaintiff attempt to admit the evidence for an improper purpose.  Finally, the Court will consider giving the jury a limiting instruction if an appropriate instruction is proposed.

## V.

## ORDER

THEREFORE IT IS HEREBY ORDERED:

1. Defendants' Motion in Limine (Docket No. 68) is DENIED without prejudice.

2. Defendants are granted sovereign immunity with respect to Plaintiff's constitutional claims contained in Counts 2, 3, 4, and 5 to the extent they request monetary damages.

3. Plaintiff's First Amendment and RFRA claims are MOOT and are DISMISSED.

4. The claims remaining for trial before the jury are (i) Plaintiff's Title VII hostile work environment and accommodation claims (Count 1) seeking monetary and declaratory relief, and (ii) his Fifth Amendment equal protection claim (Count 4), but only to the extent he seeks declaratory relief and not for recovery of monetary damages.

DATED: **January 30, 2007**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge